IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

FRED SCHLEICHER,

    Plaintiff,

v.                            Civil Action No. 5:06CV133
                                      (STAMP)
TA OPERATING CORPORATION
and BRAD ERKSON,

    Defendants.

**MEMORANDUM OPINION AND ORDER
GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND DENYING AS MOOT DEFENDANTS' MOTION TO BIFURCATE
AND DEFENDANTS' MOTIONS IN LIMINE**

I.  Background

This case arises out of a dispute concerning an employment relationship between the plaintiff, Fred Schleicher ("Schleicher"), and the corporate defendant, TA Operating Corporation ("TA"). On September 26, 2006, Schleicher brought suit against TA and Brad Erkson ("Erkson") in the Circuit Court of Ohio County, West Virginia. The defendants then removed this action to this Court. Subsequently, the defendants moved for summary judgment. Schleicher timely filed a response in opposition to the motion for summary judgment, to which the defendants have timely replied.

The defendants' motion for summary judgment has now been fully briefed by the parties and is ripe for review. After considering the parties' briefings and the applicable law, this Court finds that the defendants' motion for summary judgment must be granted. Additionally, because the defendants' motion for summary judgment

will be granted, the remaining motions pending before this Court in this action, including the defendants' motion to bifurcate the issues of liability and punitive damages and the defendants' motions in limine, will be denied as moot.[1]

## II. Facts

In April 2005, Schleicher contacted Erkson, TA's District Manager for the Mid-Atlantic District, to express interest in working as the General Manager for TA's Dallas Pike operation, located in Ohio County, West Virginia. The Dallas Pike position was already filled, so Erkson interviewed Schleicher in July 2005 for a position with TA at another location. During the interview, Erkson used a TA document entitled "General Manager Interview Guide" (Pl.'s Dep. 48:4, 62:13-25, 63:9-13).

During the interview phase, Schleicher informed Erkson that he was willing to relocate to work for TA because doing so would enable him to be closer to his son, who lived in Huntingdon, Pennsylvania. (Parties' Joint Stipulation of Facts 2; Pl.'s Dep. 53:2-9.) Erkson agreed to accommodate, to the extent practicable, Schleicher's preference not to work every weekend. (Parties' Joint Stipulation of Facts 2.) At no time during the employment negotiations, or thereafter, did Schleicher identify specific

---

[1] By letter dated November 29, 2007, this Court advised the parties of tentative rulings on the defendants' motion for summary judgment, the defendants' motion to bifurcate, and the defendants' motions in limine. This memorandum opinion and order sets forth those ruling in more detail.

2

weekends that he wanted to keep free for visiting his son, and at no time did Erkson promise that Schleicher would have certain weekends free. (Parties' Joint Stipulation of Facts 2.)

In August 2005, Erkson orally offered Schleicher a General Manager position with TA and informed him that he would initially report to the Jessup, Maryland facility and would subsequently participate in a lengthy training program in Virginia.[2] (Parties' Joint Stipulation of Facts 2.) A written offer followed on September 1, 2005. (Parties' Joint Stipulation of Facts 2.) In its letter, TA described the offered position as "General Manager in training," with a tentative start date of September 19, 2005. (Parties' Joint Stipulation of Facts 2.) Schleicher was offered an annual salary of $53,000.00, plus benefits. (Pl.'s Resp. to Defs.' Mot. for Summ. J. Ex. 2.) Schleicher, who at the time was working as the General Manager of Perkins Restaurant and Bakery in Wheeling, West Virginia, at a salary of $37,000.00 per year, plus benefits (Pl.'s Resp. to Defs.' Mot. for Summ. J. 13, 15), accepted TA's offer on September 10, 2005, and reported to work on September 19, 2005 at the Jessup, Maryland location. (Parties' Joint Stipulation of Facts 2, 3.)

---

[2]According to the defendants, the training program was scheduled to last for several months and was originally to take place in Richmond, Virginia, then was moved to Roanoke, Virginia. The location and duration of Schleicher's training do not appear to be an issue in this case.

3

When Schleicher reported to work, he discovered that Beth Spencer ("Spencer"), the General Manger whose position Schleicher understood he was to fill, had not been released from her position. Schleicher's understanding was based upon his previous conversations with Erkson during the interview process, in which Schleicher was told that TA was unhappy with Spencer's job performance and that "she was on her way out."[3] (Pl.'s Dep. 84:2-5; 86:12-25; 87:1-14.) Although Erkson hoped eventually to place two "Co-General Managers" at the Jessup location and was awaiting corporate approval to do so, he did not inform Schleicher of his plan. In fact, at the time, TA had no approved program for placing two General Managers in one location. Despite TA's organizational structure, Spencer retained the position of General Manager at the Jessup location when Schleicher reported to work as General Manager in training. As a result, the Jessup facility had, at least temporarily, two General Mangers, one of whom was General Manager in training.

Not only was Spencer still employed as General Manager, but, according to Schleicher, Spencer believed that Schleicher had been hired as her assistant, not as a General Manager or General Manager in training. (Pl.'s Resp. to Defs.' Mot. for Summ. J. 7, 8.) Indeed, Spencer completed the section of the "Employee Information

---

[3]Spencer was not a party to the interview or hiring discussions between Schleicher and Erkson. (Parties' Joint Stipulation of Facts 2.)

4

Profile" form reserved for the supervisor or manager and identified Schleicher's job title on that form as "Ast. GM I."  (Pl.'s Resp. to Defs.' Mot. for Summ. J. Ex. 3.)  According to Schleicher, this notation shows that he was hired as an Assistant General Manager or perhaps an Associate General Manager.  Additionally, at Spencer's direction, Schleicher spent his first day working in the restaurant and cleaning the restrooms. (Erkson Dep. 53: 8-19.)  Schleicher received no General Manager training on his first day of employment, nor did he receive a training itinerary or plan. (Pl.'s Dep. 94:16-25, 95: 1-4.)  He was not informed who would provide training to him, and he did not ask.  (Parties' Joint Stipulation of Facts 2.)  At the time, Schleicher appears to have been unconcerned with his official title and the duties he performed on his first day, but he was concerned about his work schedule, which Spencer set for him, and which required him to work Tuesdays through Saturdays from 3:00 p.m. to 1:00 a.m.  When Schleicher inquired about the duration of the set schedule, Spencer informed him that the Tuesday through Saturday shift would be "standard."  (Pl.'s Resp. to Defs.' Mot. for Summ. J. 8, 9.)

Upon discovering that Spencer had established a standard schedule for him, Schleicher telephoned Erkson on Erkson's cellular phone on the evening after Schleicher's first day of work to discuss his concerns about scheduling. (Parties' Joint Stipulation of Facts 3 .)  Erkson informed Schleicher that he could have some

weekends off but directed him to discuss his schedule with Spencer. (Erkson Dep. 52:20-24, 53:1-2.) Erkson then said that he would call Schleicher back and terminated the conversation to attend to family matters. (Parties' Joint Stipulation of Facts 3.) Schleicher attempted to contact Erkson again later that evening and twice the following morning. (Pl.'s Dep. 102:15-25.) When his messages went unreturned, Schleicher concluded that he was being ignored and that he had been lured to the Jessup, Maryland location to serve as Spencer's assistant under the false promise of filling a General Manager position. Without contacting Erkson, Spencer, or any other TA manager, Schleicher unilaterally terminated his employment. Later in the day, before learning that Schleicher had quit, Erkson called the worksite to try to reach Schleicher. (Erkson Dep. 57:18-19.) The following day, Erkson called Schleicher's cellular phone number and left a message. Schleicher did not return Erkson's call. (Id. 61:4-9.)

After leaving his job at TA, Schleicher returned to his home in Wheeling, West Virginia. He did not seek other employment nearer his son's residence in Huntingdon, Pennsylvania. (Pl.'s Dep. 44:18-23.)

Subsequently, Schleicher filed a claim for state unemployment benefits. (Pl.'s Resp. Ex. 1.) At his unemployment compensation hearing on December 15, 2005, Schleicher learned for the first time

6

that Erkson intended to hire two "Co-General Managers" at the Jessup location. (Parties' Joint Stipulation of Facts 3.)

Schleicher then sued TA and Erkson, alleging that TA, through Erkson, fraudulently induced Schleicher to leave his General Manager job at Perkins Restaurant and Bakery by offering him a General Manager position with TA at higher pay, at a location closer to his son, and with a schedule with some free weekends, then placed him in a position with less authority and required him to work weekends. Schleicher's complaint asserts claims for fraudulent inducement; he seeks to recover compensatory and punitive damages for his fraudulent inducement claims. For the reasons set forth below, this Court finds that the defendants' motion for summary judgment must be granted, and the defendants' remaining motions pending before this Court must be denied as moot.

## III. Legal Standard

A. Summary Judgment

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23

7

(1986). "The burden then shifts to the nonmoving party to come forward with facts sufficient to create a triable issue of fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991), cert. denied, 502 U.S. 1095 (1992)(citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)).

However, as the United States Supreme Court noted in Anderson, "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256. "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250; see also Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979)(Summary judgment "should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law." (citing Stevens v. Howard D. Johnson Co., 181 F.2d 390, 394 (4th Cir. 1950))).

In Celotex, the Court stated that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a

showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Summary judgment is not appropriate until after the non-moving party has had sufficient opportunity for discovery. See Oksanen v. Page Mem'l Hosp., 912 F.2d 73, 78 (4th Cir. 1990), cert. denied, 502 U.S. 1074 (1992). In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Because Schleicher brings a claim against TA for fraudulent inducement based upon West Virginia law, a higher standard of proof applies. Under West Virginia law, "[a]llegations of fraud, when denied by proper pleading, must be established by clear and convincing proof." Calhoun County Bank v. Ellison, 54 S.E.2d 182, syl. pt. 5 (W. Va. 1949). See also Tri-State Asphalt v. McDonough Co., 391 S.E.2d 907, 912 (W. Va. 1990) (same); Elk Refining Co. v. Daniel, 199 F.2d 479, 482 (4th Cir. 1952) ("The burden of proving fraud is unquestionably heavy . . . and it is also well established that one cannot rely blindly upon a representation without suitable investigation and reasonable basis."). Mere allegations in the pleadings, however, are not sufficient to survive a motion for summary judgment. Celotex, 477 U.S. at 322. In fact, as the Supreme Court noted in Liberty Lobby, 477 U.S. at 252, "the inquiry

9

involved in a ruling on a motion for summary judgment . . . necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits." Therefore, if the defendants show the absence of any genuine issue of material facts, this Court must determine whether Schleicher has brought forth sufficient facts to meet the "clear and convincing" standard of proof required to support an allegation of fraud under West Virginia law.

B.   Fraudulent Inducement

To prevail on a claim for fraudulent inducement under West Virginia law, a plaintiff must show "(1) that the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false; that [the] plaintiff relied on it and was justified under the circumstances in relying upon it; and (3) that [the plaintiff] was damaged because he relied on it." Lengyel v. Lint, 280 S.E.2d 66, 69 (1981). See also Kidd v. Mull, 595 S.E.2d 308, 310 (W. Va. 2004). Accordingly, if the defendants show the absence of any genuine issue of material facts, Schleicher must set forth sufficient facts to show that the defendants committed, or induced another to commit, a material and false act, upon which Schleicher justifiably relied under the circumstances and which damaged Schleicher because he relied on the act.

10

## IV. Discussion

Schleicher's fraudulent inducement claim centers upon the events occurring at the start of his employment and the discussions that he had with Erkson during the interview process. In essence, Schleicher alleges two fraudulent acts by the defendants. The first, according to Schleicher, was placing him in a position other than the General Manager in training position offered to him in the September 1, 2005 letter. The second was allowing Spencer to set Schleicher's weekend work schedule after Erkson had informed Schleicher that TA would "work with him" to allow him some free weekends. The defendants argue that Schleicher cannot establish the essential elements of a fraudulent inducement claim because he was given the position that he was promised--General Manager in training--and because Schleicher was never told that he would have all weekends or specific weekends free. Consequently, the defendants contend, their motion for summary judgment should be granted.

Schleicher argues that summary judgment should not be granted in defendants' favor because he was not placed in the position he was promised. As support for his conclusion that he was placed in a subordinate position, Schleicher states that he received no training schedule for a General Manager position; that he was assigned duties on his first day which are inconsistent with those of a General Manager, or General Manager in training; that the

11

incumbent General Manager, Beth Spencer, believed that Schleicher had been hired as her assistant; and that, unbeknownst to Schleicher, Erkson planned to make Schleicher a Co-General Manager once corporate approval for the position came through.  Schleicher also claims that the defendants fraudulently induced him to accept a position with TA by agreeing to give him time off on weekends to visit his son and then establishing a standard schedule that required him to work weekends.

Viewing the facts in the light most favorable to Schleicher, as the non-moving party, this Court finds that the defendants have shown the absence of any genuine issue of material fact and that none of the acts upon which Schleicher relies meet the essential elements for fraudulent inducement under West Virginia law.  Specifically, Schleicher has not shown by clear and convincing evidence that the defendants' own acts or acts induced by them were material and false.  Schleicher has, therefore, failed to meet the standard for establishing a claim for fraudulent inducement.

A. <u>Failure to Establish Material and False Acts Concerning Training</u>

As to his training schedule, Schleicher does not dispute that he was to report initially to the Jessup, Maryland location before undergoing training in Virginia for several months.  That he did not receive a training plan on or before his first day of employment may indicate a lack of planning, organization, or

communication on TA's part, but it does not indicate that the promise of training was to remain unfulfilled. Therefore, to the extent that Schleicher's claim rests upon the defendants' promise to train him as a General Manager and their subsequent failure to give him a training itinerary, he has not set forth sufficient facts to show a material and false act.

B.  Failure to Establish Material and False Acts Concerning Job Duties and Position Title

Schleicher's argument that he was fraudulently induced to accept the TA position in Maryland is similarly unsupported by the facts upon which he relies concerning his job duties and title. The parties do not dispute that Spencer assigned Schleicher to work in the restaurant and to clean the restrooms on his first day of employment. However, Schleicher does not allege, and nothing in the record indicates, that he was assigned these duties on any basis other than Spencer's misunderstanding about the position for which Schleicher was hired. That Spencer seems to have believed that Schleicher was hired as her assistant does not establish a fraudulent act by the defendants, and the plaintiff has not argued, nor has he offered any evidence, that Spencer possessed authority or apparent authority to determine Schleicher's position at TA. Consequently, Spencer's conduct does not form an adequate basis for Schleicher's fraudulent inducement claim.

Similarly, regarding Erkson's hope to make Schleicher a Co-General Manager, the parties do not dispute that, at all times relevant, the position of Co-General Manager did not exist within TA's corporate framework. The position offered by TA and accepted by Schleicher was that of General Manager in training, and nothing before this Court indicates that the position he filled was anything other than a General Manager in training. Erkson's hope to make Schleicher a Co-General Manager at some indeterminate point in the future does not establish a fraudulent act.

C. <u>Failure to Establish Material and False Acts Concerning Work Schedule</u>

Notably, Schleicher did not seem to be concerned at the time about his job duties or his position title; rather, he was primarily interested in his weekend work schedule and the authority that he perceived Spencer possessed to require him to work every weekend indefinitely. Schleicher cannot base his fraudulent inducement claim on the facts surrounding his weekend work schedule because no definite promise upon which Schleicher could rely seems to have been made on that subject. Erkson agreed to "work with" Schleicher to allow Schleicher to have some free weekends, but nothing in the record suggests that Erkson promised Schleicher free weekends every week or free weekends at designated intervals or on specific dates. To the contrary, the parties have stipulated that Erkson and Schleicher discussed Schleicher's "desire to have some

weekends off to visit with his son in Huntingdon, Pennsylvania." (Parties' Joint Stipulation of Facts 2.) They have further stipulated that "[d]uring the interview stage, Erkson advised [Schleicher] that he would work with him regarding weekend work" but that Schleicher "never provided Erkson with specific dates on which he could not work nor did he advise that he could not work the very first weekend during his on-the-job training." (Parties' Joint Stipulation of Facts 2.) Consequently, any expectation that Schleicher had regarding his weekend work schedule was just that-- an expectation. Erkson made no promises about Schleicher's work schedule upon which Schleicher could reasonably rely to conclude that he would have every weekend or any specific weekend free. Erkson's comments that TA would work with Schleicher to give him some free weekend time do not constitute material or false acts. Therefore, insofar as Schleicher bases his fraudulent inducement claim upon his expectations concerning his weekend work schedule, the facts do not support his claim.

Applying a clear and convincing standard to the facts of this case, this Court concludes that Schleicher has not demonstrated that the defendants engaged in any material and false act. The parties may have experienced multiple instances of misunderstanding, miscommunication, and even confusion concerning Schleicher's training and employment conditions, but these do not

15

constitute fraudulent inducement. Accordingly, this Court finds that the defendants' motion for summary judgment should be granted.

## V. Conclusion

Based upon the foregoing discussion, it is ordered that the defendants' motion for summary judgment should be, and is hereby, GRANTED. It is further ordered that the remaining motions in this case pending before this Court, including the defendants' motion to bifurcate the issues of liability and punitive damages and the defendants' motions in limine, are DENIED as moot.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein. Pursuant to Federal Rule of Civil Procedure 58, the Clerk is DIRECTED to enter judgment on this matter.

DATED: January 9, 2008

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE